JAMES F. WALTON, respondent,

*v.*

ALFRED TAYLOR, executor, appellant.

[Submitted December 10th, 1910.   Decided March 6th, 1911.]

1. A tax title deed taken under the Martin act cannot be attacked collaterally.

2. Whether or not an executor who was an unsuccessful defendant in the court of chancery should pay costs is within the discretion of that court.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming.

*Mr. Edward Ambler Armstrong* and *Mr. Herbert A. Drake,* for the appellant.

*Messrs. French & Richards,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

Upon the merits this appeal is governed by our decision in the case of the same complainant against the American Baptist Pub-

lication Society. The facts are similar excepting that in the present case the service of the notice to redeem is not controverted.

The defendant below was, however, an executor and the decree orders that he pay complainant's costs, and as to this portion of the decree the appellant contends that it is erroneous because he was defending a right that accrued to his decedent in her lifetime. For his immunity from costs in such a case appellant cites *Kinney* v. *Central Railroad Co., 34 N. J. Law (5 Vr.) 273,* and *Bell* v. *Samuels, 60 N. J. Law (31 Vr.) 370,* both of which were cases at law and hence under a statute (Practice act), which does not apply to the court of chancery at all or to unsuccessful defendants even in a court of law.

There are, however, equity cases that might have been cited, which show the existence in the court of chancery of a fairly well defined rule of practice respecting costs against personal representatives somewhat analogous to the statutory rule that arbitrarily controls the courts of law. Thus Chief-Justice Green, sitting for the chancellor, in the case of *Gifford* v. *Thorn, 9 N. J. Eq. (1 Stock.) 702,* said: "The general rule in equity (as well as at law) is, that persons suing *in autre droit* are not responsible for costs. An executor or administrator, complainant in equity, will not be ordered to pay costs unless the suit be clearly groundless or vexatious."

This statement lacks the precision that ordinarily characterizes the language of this jurist and would be actually misleading if it were not that the case of *Gelman* v. *Beardsley, 2 Johns. Ch. 274,* which is cited as supporting it, states the correct rule. This is what Chancellor Kent said in that case: "Ordinarily executors do not pay costs. * * * They are not supposed to know as plaintiffs the imbecility of their own suit. This is the reason of the *rule at law.* But in *this* court where the costs are *discretionary* they seem to depend more upon the particular circumstances of each case." This gives to the rule of practice its proper force. That such and none other is its status is shown by Chancellor Zabriskie in *Shepherd* v. *McClain, 18 N. J. Eq. (3 C. E. Gr.) 128:* "In this court costs by statute are in the discretion of the court. In general that discretion is exercised according to rules that have been fixed by practice. Courts of law by statute

*cannot* award costs against executors and administrators when plaintiffs but *must,* if they are unsuccessful defendants. Courts of equity are not within that statute and have not adopted it in practice. It is an arbitrary rule and if this court adopts it, it cannot award costs as the act regulating its practice requires, *i. e.,* according to its discretion." This places the matter precisely upon its proper footing and is amongst other things a demonstration that whatever may be the force accorded by the court of chancery to rules adopted by it in the exercise of a discretion that by statute it is required to exercise, a departure from such rules, unless it amounts to an abuse of such discretion, is not *ipso facto* ground for reversal upon appeal. The statute to which Chancellor Zabriskie refers, by which costs in equity are in the discretion of the court of chancery, excepting where otherwise directed by the Chancery act or some other law, which is now section 84 of the act of 1902 *(P. L. 1902 p. 538),* is a very ancient one, having come into our law by the act of June 13th, 1799. *Pat. L. 1799 p. 434.* The present revision has substituted the words "some other law" for "some other act of the legislature," whether for economy of words or for some other object does not concern us in the absence of any law, within or without the Chancery act, directing that the costs awarded by the chancellor shall not be in his discretion.

The provision of section 229 of the Practice act *(Rev. 1903 p. 597),* which gives costs to successful defendants "excepting against executors and administrators prosecuting in the right of their testators or intestates," is even more ancient, having come in by the act of February 18th, 1795. *Pat. L. 1795 p. 149.*

These statutes, or to be more accurate, the Chancery statute, modified the general rule that a personal representative, if the title to the action came to him in that character, shall not pay costs if he fail in such action. As to our courts of law the Practice act was in effect declaratory of the construction that had been placed by the English courts upon the statutes of *23 Hen., 8 Ch. 15,* and *4 Jac., 1 Ch. 3,* which did not in express terms save executors and administrators from paying costs where defendants succeeded against them. "The exception in our statute," said Chief-Justice Hornblower in *Norcross* v. *Boulton, 16 N. J. Law, (1*

*Harr.*) *310,* "is no broader than that made under the British statutes," and he gives his reasons for this statement and the cases that support it.

Our Chancery act, on the contrary, by requiring the discretion of the chancellor, forbade the substitution therefor of the arbitrary rule laid down at law or of any fixed and invariable rule, as is pointed out by Chancellor Zabriskie. This, of course, does not mean that rules of practice, as to the normal exercise of such discretion, shall not spring up or that they may not be uniformly applied to similar situations; what it does import is that the departure by the court of first instance from such rules affords, of itself, no basis for interference by this court.

In reaching this result upon the general principles that control in cases of appellate review it has been assumed, in favor of the appellant, that the court below denied to him the protection afforded by its own established rules, for that is the gravamen of his appeal. The fact appears to be otherwise or at least to be unestablished by the appellant. He was not a complainant who was unsuccessful because the facts that constituted the infirmity of his decedent's case were unknown to him; on the contrary, he was not a complainant at all, but a defendant, charged with a knowledge of the law. Hence he was charged with knowledge that by statute the complainant's deed was not subject to be questioned collaterally, and therefore his demand for a feigned issue in order to litigate before a jury matters that were foreclosed by the statute was a useless if not a vexatious proceeding. The court of chancery having, in the exercise of its discretion, visited him with costs such order will not be disturbed.

The decree of the court of chancery is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, SULLIVAN—14.

*For reversal*—None.